United States District Court
For the Northern District of California

1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5

6

7 WESTERN WIND ENERGY CORP.,

8                Plaintiff,                No. C 12-4806 PJH

9     v.                        **ORDER DENYING MOTION**
                                         **FOR ATTORNEY'S FEES**

10 SAVITR CAPITAL, LLC,

11                Defendant.

12 _____/

13       Before the court is the motion of defendant Savitr Capital, LLC ("Savitr") for

14 attorney's fees pursuant to Fed. R. Civ. P. 54, Civil L.R. 54-1 and the Lanham Act, § 15

15 U.S.C. 1117(a). The motion is fully briefed and the court determines that the matter is

16 suitable for decision without oral argument. Having carefully reviewed the parties' papers

17 and the relevant legal authority, the court hereby DENIES the motion for attorney's fees for

18 the reasons set forth below.

19                                **BACKGROUND**

20       On September 13, 2012, plaintiff Western Wind Energy Corp. ("Western") filed a

21 complaint against Savitr for trademark infringement and unfair competition, alleging

22 unauthorized use of Western's trademark on materials sent to Western's shareholders.

23 Western also filed an application for a temporary restraining order ("TRO"), on which the

24 court set a deadline for Savitr to file an opposition brief and a hearing date.

25       According to the allegations of the complaint, Western is a publicly-traded Canadian

26 energy company that develops and operates wind and solar energy generation facilities.

27 Western owns a U.S. trademark for its company logo, Reg. No. 4,017,546, which is

28 registered for use in connection with production of wind energy. Since 2003, Western has

United States District Court
For the Northern District of California

1   used its trademarked logo in communications with its investors, including those located in

2   the United States.

3          Savitr is an investment manager that owns shares in Western.  On July 30, 2012,

4   Western announced its intention to sell its corporate assets.  On September 5, 2012, Savitr

5   distributed a proxy form to Western shareholders for the annual shareholder meeting on

6   September 25, 2012, with materials recommending that shareholders vote against the

7   recommendations of Western's current management and elect new directors nominated by

8   Savitr.  The materials included a flyer displaying the Western logo next to Savitr's logo.

9   The flyer was accompanied by a letter that was signed by A. Midler, managing member of

10  Savitr, criticizing the Western board for "inexperience" and "poor financial stewardship."

11  The proxy form circulated by Savitr was printed on green paper, in contrast to the yellow

12  proxy ballot form that was sent to shareholders by Western management.  The Savitr form

13  of proxy stated in block letters, "**THIS FORM OF <u>GREEN</u> PROXY IS NOT BEING**

14  **SOLICITED BY OR ON BEHALF OF THE MANAGEMENT OF WESTERN WIND.**"

15         In support of its application for a TRO, Western alleged that Savitr's use of

16  Western's logo on the flyer was intended to cause confusion, mistake or deception as to

17  whether Western sponsored or approved of Savitr's proxy statements and voting

18  recommendations.  The TRO application sought the following relief: that Savitr be

19  immediately enjoined from further disseminating its flyer bearing Western's logo; that Savitr

20  be enjoined from using Western's logo in any manner; and that Savitr inform every recipient

21  of its proxy materials that Savitr did not have permission to use Western's logo, that neither

22  Western nor its management sponsored or approved any of Savitr's materials, and that by

23  submitting a green proxy, the shareholder would cast a vote adverse to Western's

24  management.

25         On September 14, 2012, the court issued an order setting a briefing schedule and

26  hearing on Western's TRO application.  Savitr filed an opposition on September 17, 2012.

27  The court held a TRO hearing on September 19, 2012, at which both parties were

28  represented by counsel.

United States District Court

For the Northern District of California

1    Addressing the likelihood of confusion caused by Savitr's use of the Western logo in

2 its flyer, counsel for Savitr stated that after sending the flyer and letter with the green proxy

3 form, it subsequently sent a letter to the shareholders on September 14, 2012, to clarify

4 that its first letter used the Western logo "only to make clear which company meeting it

5 concerned." Trans. at 17-20. Counsel for Savitr also represented that "no more flyers are

6 going out," and that Savitr would not use the Western logo again, at least in the next two

7 days before the proxy ballots were due, "in light of the issue that has been made over it."

8 Trans. at 29, 35-36.

9    After hearing argument and reviewing the proxy materials sent by Savitr, the court

10 ruled that a reasonable person would not be confused about who sent the materials. Sept.

11 19, 2012 transcript ("Trans.") at 36. Having determined that Western did not demonstrate

12 likelihood of success on the merits, the court denied the motion for TRO and for an order to

13 show cause for a preliminary injunction concerning Savitr's use of the Western logo in

14 proxy materials. *Id.* at 38. The court noted that Western was not precluded from filing a

15 duly noticed motion for preliminary injunction if there were some other basis for doing so.

16 *Id.* The court issued a written order denying the TRO application on the grounds that

17 Western did not show that it was likely to succeed on the merits of its trademark

18 infringement claim and that Western's request for relief appeared to be moot in light of the

19 corrective actions taken by Savitr.

20    At the September 25, 2012 shareholder meeting, the Western board of directors, as

21 proposed by Western management, was elected. On September 27, 2012, Savitr filed an

22 anti-SLAPP motion to strike the state law claims in this action. On October 1, 2012,

23 Western filed an amended complaint dismissing the state law claims. By letter to the court

24 dated October 8, 2012, Savitr withdrew the motion to strike in light of the amended

25 complaint. On October 9, 2012, Western filed a notice of voluntary dismissal of the action

26 without prejudice. On October 12, 2012, the clerk of court filed a report on the filing or

27 determination of a trademark action, noting that the notice of voluntary dismissal was filed

28 on October 9, 2012.

3

1    Savitr filed the instant motion for attorney's fees on November 19, 2012.  Savitr

2  seeks an award of fees in the amount of $220,183.95, plus the amount of fees incurred in

3  bringing the fee motion.  The matter is fully briefed and submitted on the papers.

**DISCUSSION**

**A.    LEGAL STANDARDS**

6    Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may

7  award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  "An action

8  may be considered exceptional when a plaintiff's case is groundless, unreasonable,

9  vexatious, or pursued in bad faith."  *Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., Ltd.*, 668

10  F.3d 677, 687 (9th Cir. 2012) (citing *Stephen W. Boney, Inc. v. Boney Servs.*, 127 F.3d

11  821, 827 (9th Cir. 1997) (internal quotation marks omitted)).

12    Once a determination is made that attorney's fees are appropriate, the standard to

13  be applied in calculating an award of attorney's fees is that of "reasonableness."  In setting

14  a fee, the court must first determine the presumptive lodestar figure by multiplying the

15  number of hours reasonably expended on the litigation by the reasonable hourly rate.

16  *Secalt*, 668 F.3d at 689.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Next, in

17  appropriate cases, the court "may adjust the 'presumptively reasonable' lodestar figure

18  based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th

19  Cir. 1975), that have not been subsumed in the lodestar calculation."  *Secalt*, 668 F.3d at

20  689.[1]

21  _____

22    [1]    The twelve *Kerr* factors bearing on the reasonableness of the fee are as follows:

23    (1) the time and labor required, (2) the novelty and difficulty of the questions
      involved, (3) the skill requisite to perform the legal service properly, (4) the
24    preclusion of other employment by the attorney due to acceptance of the case,
      (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time
25    limitations imposed by the client or the circumstances, (8) the amount involved
      and the results obtained, (9) the experience, reputation, and ability of the
26    attorneys, (10) the undesirability of the case, (11) the nature and length of the
      professional relationship with the client, and (12) awards in similar cases.

27  *Morales v. City of San Rafael,* 96 F.3d 359, 364 (9th Cir. 1996), *opinion amended on denial
28  of reh'g,* 108 F.3d 981 (9th Cir. 1997).  Among the *Kerr* factors presumably taken into account
    in the lodestar calculation are: "(1) the novelty and complexity of the issues, (2) the special skill

4

United States District Court

For the Northern District of California

1    The court may reduce a requested fee award, or deny one altogether, where a fee

2 request appears unreasonably inflated.  *See Hensley*, 461 U.S. at 434 (court may deny

3 compensation for "hours that are excessive, redundant, or otherwise unnecessary").

4    **B.   Untimeliness of Motion**

5    As a threshold matter, Western contends that Savitr's fee motion, filed on November

6 19, 2012, is untimely pursuant to Federal Rule of Civil Procedure 54 which requires that a

7 motion seeking attorney's fees be filed no later than 14 days after the entry of judgment.

8 *See also* Civil L.R. 54-5 ("Unless otherwise ordered . . . motions for awards of attorney's

9 fees by the Court must be served and filed within 14 days of entry of judgment . . . .").

10 Here, Western filed the notice of voluntary dismissal on October 9, 2012, and the court did

11 not enter judgment on the voluntary dismissal.  Savitr therefore argues that the 14-day

12 limitations period did not begin to run with the notice of voluntary dismissal, but that a

13 judgment would be deemed entered after 150 days have run from the entry of the voluntary

14 dismissal.  Reply at 11 (citing Fed. R. Civ. P. 58(c)(2)(B)).  Savitr's argument mistakenly

15 assumes that Western's voluntary dismissal required an entry of judgment for purposes of

16 triggering the 150-day default period.

17    A similar argument was rejected by the court in *Advance Capital, Inc. v. M/V ANGIE,*

18 *Official No. 249544,* 273 F.R.D. 660 (W.D. Wash. 2011).  There, the district court granted

19 the plaintiff's motion for voluntary dismissal pursuant to Rule 41(a)(2).  In ordering the

20 dismissal, the court considered the defendant's argument that it would be prejudiced by the

21 duplicative costs of litigating the same action in state court and conditioned the dismissal

22 upon the payment of appropriate costs and fees for work that could not be used in any

23 future litigation.  *Id.* at 661.  The defendant did not file a motion for attorney's fees until

24 more than three months after the dismissal order was filed, and two months after filing an

25 appeal of order.  The court denied the defendant's fee motion as untimely, rejecting the

26

27 _____

28 and experience of counsel, (3) the quality of representation, (4) the results obtained, and (5)
the contingent nature of the fee agreement."  *Id.* at 364 fn. 9 (internal citation and quotation
marks omitted).

United States District Court

For the Northern District of California

1  defendant's argument that pursuant to Rule 58(c), a party has 150 days to file a motion for

2  attorney's fees if a separate document of judgment is required but not entered.  The court

3  in *Advance Capital* reasoned as follows:

4  > When a court grants an FRCP 41 motion to dismiss, FRCP 58(a)
   > requires no separate judgment.  The Court is not adjudging any

5  > matter in favor of any party.  Therefore, the time limit for motions for
   > attorney's fees began to run when the Court dismissed the case, and

6  > the deadline for such motions was long passed when Defendant filed
   > the instant motion.

7

8  *Id.*  Similarly, here, Western's voluntary dismissal did not involve an adjudication by the

9  court.  "A voluntary dismissal without prejudice is not adverse to the plaintiff's interests.

10  The plaintiff is free to seek an adjudication of the same issue at another time in the same or

11  another forum."  *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995).  Under Rule

12  41(a)(1), a plaintiff has an absolute right voluntarily to dismiss his action prior to service by

13  the defendant of an answer or a motion for summary judgment. . . .  The dismissal is

14  effective on filing and no court order is required."  *Id.* at 1506.

15      Neither party cites binding authority on the question whether a plaintiff's notice of

16  voluntary dismissal without prejudice triggers the time to file a motion for attorney's fees

17  pursuant to Rule 54 where, as here, no judgment would be entered.  Under Ninth Circuit

18  authority, "[a] voluntary dismissal *without prejudice* is ordinarily *not* a final judgment from

19  which the plaintiff may appeal."  *Concha*, 62 F.3d at 1507.  Turning to the procedures

20  governing the time to appeal, the Ninth Circuit has held that for purposes of filing a timely

21  notice of appeal, "[a] judgment or order is not entered within the meaning of Fed. R. App. P.

22  4(a) unless it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil

23  Procedure.  Rule 58 requires that every judgment be set forth on a separate document, and

24  Rule 79(a) details the civil docketing procedure to be followed by the district court clerk

25  when entering the judgment."  *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751,

26  754 (9th Cir. 1986) (citation and footnotes omitted).  The purpose of the separate document

27  requirement "is to avoid the inequity of a party being denied the opportunity to appeal

28  because of a failure to recognize which of several documents or docket entries constituted

United States District Court

For the Northern District of California

1    'entry' of judgment." *Id.* at 755 n.3.  In *Beaudry*, the Ninth Circuit held that a minute order

2    constituted entry of judgment triggering the time to file the notice of appeal, noting that

3    "plaintiff's counsel received a document, the sole contents of which informed him that his

4    post-judgment motions had been ordered denied and which was file stamped.  We have no

5    trouble concluding that in these circumstances a reasonable person would realize that the

6    court had entered an order finally disposing of the case." *Id.*

7           Here, because the voluntary dismissal became effective upon filing, without an order

8    of the court or an entry of judgment, the court determines that the notice of voluntary

9    dismissal triggered the time to file a motion for attorney's fees. *See Advance Capital*, 273

10   F.R.D. at 661.  Savitr was served, through the court's electronic case filing system, with

11   Western's notice of voluntary dismissal on October 9, 2012.  Thus, the filing of the voluntary

12   dismissal sufficiently put Savitr on notice that the action was dismissed without a court

13   order pursuant to Rule 41(a)(1)(A)(i).  Under these circumstances, it would be reasonable

14   to expect that the 14-day time to file a motion for fees had started to run with the notice of

15   voluntary dismissal because no judgment would be entered.  If there had been any

16   ambiguity about whether the voluntary dismissal would trigger the 14-day time to file a fee

17   motion, or if the 14-day period was inadequate to prepare a fee motion, Savitr could have

18   sought an extension of time to file its motion, as advised in the commentary to Civil Local

19   Rule 54-5(a).  Furthermore, the court notes an inconsistency in Savitr's argument that the

20   voluntary dismissal should not trigger the running of time to file a fee motion, in light of

21   Savitr's argument on the merits of its fee motion that the voluntary dismissal is a ground for

22   conferring on it prevailing party status, even in the absence of an entry of judgment.

23          The court therefore DENIES Savitr's fee motion as untimely.  Having determined that

24   the fee motion is insufficient on procedural grounds, the court proceeds, in the alternative,

25   to consider the substantive arguments presented in the motion.

26

27

28

United States District Court
For the Northern District of California

**C.     Savitr's Motion for Attorney's Fees**

Savitr seeks attorney's fees as the "prevailing party" under the Lanham Act.  To seek an award of fees, Savitr must establish the following: (1) that it is the prevailing party; and (2) that the case is exceptional.  *See Secalt*, 668 F.3d at 687.

**1.     Prevailing Party**

**a.     Denial of TRO Application on the Merits**

To qualify as a prevailing party for the purpose of awarding fees, a litigant must achieve a "material alteration of the legal relationship of the parties," and that alteration must be "judicially sanctioned."  *Carbonell v. I.N.S.,* 429 F.3d 894, 898 (9th Cir. 2005) (citing *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001)) (internal quotation marks omitted).  In *Carbonell*, the Ninth Circuit recognized that a litigant can "prevail" for the purposes of awarding attorney's fees as a result of judicial action other than a judgment on the merits or a consent decree (provided that such action has sufficient "judicial imprimatur").  *Id.* at 899.

The parties agree that this trademark dispute presented a nominative fair use defense.  In nominative use cases, the court considers whether (1) the product was readily identifiable without use of the mark; (2) defendant used more of the mark than necessary; and (3) defendant falsely suggested he was sponsored or endorsed by the trademark holder.  *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76 (9th Cir. 2010) (citations omitted).  "This test evaluates the likelihood of confusion in nominative use cases."  *Id.* (citation and quotation marks omitted).

Savitr argues that where preliminary relief is decided on the merits, the victorious party may be deemed the prevailing party.  Savitr relies on out-of-circuit authority for the proposition that fees for a "prevailing party" should be awarded to a defendant who successfully defends against a TRO application that was decided on the merits.  Mot. at 5 (citing *Maine School Administrative District No. 35 v. Mr. & Mrs. R.*, 321 F.3d 9 (1st Cir. 2003)).  In *Maine School*, a school district sued the parents of a disabled child and sought a TRO and preliminary injunction prohibiting the parents from using the "stay put" provisions

United States District Court
For the Northern District of California

of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), to keep their child in a mainstream school pending administrative review of his placement. *Id.* at 12-13. The school district invoked a statutory provision that permits temporary changes in a child's placement if a school district can demonstrate "by substantial evidence that maintaining the current placement of such child is substantially likely to result in injury to the child or to others." *Id.* at 16. When the district court denied the TRO, the school district moved to voluntarily dismiss its complaint. The parents did not object to the dismissal but sought attorney's fees and costs. The district court granted the school district's motion for voluntary dismissal but denied the parents' request for fees on the ground that they were not a prevailing party. *Id.* at 13. On appeal, the First Circuit reversed the district court and concluded that the parents' fee request should be granted because they were in fact prevailing parties who had defeated the school district's suit on the merits. *Id.* at 17 ("Because the district court denied injunctive relief on the basis that the School District had not adduced sufficient proof ..., it is readily evident that the appellants successfully defended the [suit] *on the merits*."). The court held that the parents' victory was material, not purely technical or de minimis, reasoning that by defending against the school district's lawsuit, the parents "not only deprived the School District of the benefit that it sought in bringing suit but also blocked it from implementing a course of action inimical to [their child's] interests." *Id.* at 17.

Western fails to address or distinguish the holding of *Maine School*, which the Ninth Circuit has cited with approval for the principle that "a party may be accorded prevailing party status by being awarded 'some relief by the court.'" *Shapiro ex rel. Shapiro v. Paradise Valley Unified School Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004). Rather, Western contends that the court did not adjudicate the merits of Western's underlying claim and that Savitr therefore cannot be deemed the prevailing party. Opp. at 8-9. Western argues that in denying the TRO application, the court limited its holding to denying Western's request for an order requiring Savitr to send another corrective letter to Western's shareholders. By so arguing, Western understates the extent of the court's

1  ruling denying the TRO application after reviewing the proxy materials in dispute, including

2  the Savitr flyer bearing the Western logo, and considering Western's argument that it

3  showed likelihood of success under the Ninth Circuit's three-part test for nominative fair

4  use, particularly the elements whether Savitr used more of the trademark than was

5  necessary to refer to Western and whether the use of the trademark suggested

6  sponsorship or endorsement by the trademark holder.  Trans. at 5-7.

7       In a nominative use case, a defendant seeking to assert nominative fair use as a

8  defense need only show that it used the mark to refer to the trademarked good, which

9  Savitr showed here as to the presence of the Western logo on the flyer.  *Toyota Motor*

10  *Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1182 (9th Cir. 2010).  The burden then reverts

11  to the plaintiff to show a likelihood of confusion.  *Id.*  A finding of nominative fair use is a

12  finding that the plaintiff has failed to show a likelihood of confusion as to sponsorship or

13  endorsement.  *Id.*

14       Upon submission of argument and presentation of evidence at the TRO hearing, the

15  court ruled that Western had failed to demonstrate a likelihood of success on its trademark

16  infringement claim.  After reviewing the Savitr proxy materials at issue, the court held that a

17  reasonable person would not be confused by the single use of the Western logo on the flyer

18  as to whether the materials were sponsored or endorsed by Western's management, in

19  light of the totality of the documents.  Trans. at 36-38.  Accordingly, the court denied

20  Western's request for a TRO and for an order to show cause why a preliminary injunction

21  should not issue.  Applying the reasoning of *Maine School* here, the "quest for injunctive

22  relief was the sole object - the raison d'être -" of Western's action against Savitr.  *Maine*

23  *School*, 321 F.3d at 16.  Because Savitr successfully defended against Western's request

24  for injunctive relief, resulting in the court's denial of the requested relief based on a

25  determination of the merits of Western's claims, Savitr is the prevailing party for purposes

26  of a fee motion under the Lanham Act.  *See also All American Distrib. Co., Inc. v. Miller*

27  *Brewing Co.*, 736 F.2d 530, 533 (9th Cir. 1984) (affirming award of fees under a state

28  statute to defendant who defeated a motion for preliminary injunction where the plaintiff

United States District Court
For the Northern District of California

1   subsequently dismissed the remaining claims in a case that was essentially "an action for

2   an injunction pending arbitration").

3         Western also suggests that in the written order, the court improperly applied the

4   eight-factor test for likelihood of confusion articulated in *AMF Inc. v. Sleekcraft Boats*, 599

5   F.2d 341, 348–49 (9th Cir. 1979), which focuses on the similarity of the marks used by a

6   plaintiff and a defendant, rather than the three-factor test applicable to nominative use

7   cases where a defendant uses the mark to refer to the trademarked good itself.  In

8   considering whether consumers are likely to believe that use of a mark is sponsored or

9   endorsed by a trademark holder when conducting a nominative fair use analysis, the court

10  must focus on the "'reasonably prudent consumer' in the marketplace."  *Toyota*, 610 F.3d at

11  1176 (citing *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th

12  Cir.1998) (describing the test for likelihood of confusion in analogous *Sleekcraft* context)).

13  By citing *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002) for the

14  principle that "use of a mark must be likely to confuse an appreciable number of people as

15  to the source of the product," the court did not conduct a *Sleekcraft* analysis or improperly

16  shift the burden of proof on the issue of likelihood of confusion.  "[A]s the Supreme Court

17  has unambiguously instructed, the Lanham Act always places the 'burden of proving

18  likelihood of confusion . . . on the party charging infringement.'"  *Toyota*, 610 F.3d at 1183

19  (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118

20  (2004)).

21         **b.    Voluntary Dismissal**

22         Savitr further argues that voluntary dismissal without prejudice may confer prevailing

23  party status on a defendant, citing *All American*, 736 F.2d at 533.  In *All American*, the

24  plaintiff sued the defendant for terminating a beer distributorship agreement in violation of

25  Arizona state law, seeking injunctive relief and damages.  The plaintiff filed a motion for a

26  preliminary injunction to enjoin the defendant from terminating the distributorship

27  agreement pending arbitration, which the district court denied.  After the court of appeals

28  affirmed the denial of the preliminary injunction, the plaintiff moved to dismiss its remaining

11

United States District Court

For the Northern District of California

claim for injunctive relief.  The district court ordered dismissal without prejudice, and the defendant sought to recover its attorney fees as a prevailing party under an Arizona statute. The district court awarded fees to the defendant, and the plaintiff appealed, arguing that the defendant was not a prevailing party because the adjudication only determined that the plaintiff had not met its burden for obtaining a preliminary injunction.  The Ninth Circuit affirmed the fee award, finding that the Arizona statute made no reference to adjudication on the merits as a prerequisite to recovering attorney fees as a prevailing party.  Applying state law, the court of appeals held that, in light of the totality of the litigation, the district court did not abuse its discretion by concluding that the defendant was the prevailing party where the case was essentially "an action for an injunction pending arbitration, with damages claims appended."  *Id.* at 533.  The *All American* court did not hold, however, that the mere voluntary dismissal of claims without prejudice confers prevailing party status on a defendant.

The question whether dismissal without prejudice confers prevailing party status upon the defendant was directly presented in *Oscar v. Alaska Dep't of Educ. & Early Dev.*, 541 F.3d 978, 981 (9th Cir. 2008).  There, the plaintiff filed a lawsuit under the IDEA against the state education department for refusing to accept his administrative complaint, which he neglected to sign.  The state filed a motion to dismiss based on the plaintiff's failure to sign the administrative complaint, and the plaintiff subsequently filed a motion for voluntary dismissal, explaining that his claim was rendered moot after he filed a signed administrative complaint with the state.  The district court granted the state's motion to dismiss for failure to state a claim, dismissed the action without prejudice, and awarded attorney's fees to the state. On appeal from the award of fees, the Ninth Circuit held that dismissal without prejudice neither constitutes a judgment on the merits, nor alters the legal relationship of the parties because the defendant remains subject to the risk of re-filing.  *Id.* (citing, *inter alia, Buckhannon*, 532 U.S. at 600).   Accordingly, the court of appeals held that the defendant was ineligible for an award of fees under the IDEA and vacated the fee award. *Id.*

United States District Court

For the Northern District of California

1    Under the holding of *Oscar*, Savitr is not entitled to prevailing party status simply by

2    virtue of Western's voluntary dismissal of its lawsuit.  As discussed above, however, Savitr

3    is the prevailing party for purposes of a fee motion under the Lanham Act based on the

4    court's determination of the merits of Western's TRO application.

5         2.    **Exceptional Case**

6    To succeed in its request for an award of fees, Savitr must also show that this case

7    is exceptional under the Lanham Act, in other words, that Western had no reasonable or

8    legal basis to believe in success on the merits.  *Secalt*, 668 F.3d at 688 (citing *Cairns v.*

9    *Franklin Mint Co.*, 292 F.3d 1139, 1156 (9th Cir. 2002)).  Savitr contends that Western filed

10   this lawsuit for an improper purpose, namely, to make false representations to shareholders

11   about the claims asserted in both this action and the lawsuit filed in Canada, for the

12   purpose of influencing the outcome of the shareholder vote.  The veracity of the alleged

13   misrepresentations about the lawsuits made by Western in its communications with

14   shareholders was also raised at the TRO hearing and is not at issue on the present fee

15   motion.  *See* Trans. at 22-23.  The fact that Western sought to enjoin Savitr from allegedly

16   infringing its trademark in further communications with Western shareholders to prevent

17   confusion in the final days before the shareholder vote does not render the lawsuit

18   improper.  Further, the nature of the proxy contest was disclosed to the court in the filings

19   addressing Western's request for injunctive relief and does not render the lawsuit

20   exceptional.  *See Secalt*, 668 F.3d at 689 ("Even if Tractel had an ulterior anti-competitive

21   motive, had it made a colorable claim, that factor would weigh in our analysis.").  The

22   record does not support a finding of improper purpose or bad faith litigation.

23   Here, Western presented some evidence to support a colorable claim that Savitr's

24   use of the Western logo on a flyer soliciting proxy votes was likely to cause confusion as to

25   whether the materials were endorsed by Western.  Western presented documentary

26   evidence showing the use of its logo on Savitr's proxy materials and, at the hearing,

27   proffered the declarations of two shareholders who claimed that they were confused by the

28   materials but admittedly did not vote for the directors nominated by Savitr.  Trans. at 19.

United States District Court

For the Northern District of California

1    As Western argued in support of its TRO application, Savitr issued a flyer using the

2    Western logo with no disclaimer on the face of the flyer to dispel a suggestion of

3    sponsorship by Western.  Trans. at 7.  Further, as the court noted at the TRO hearing, the

4    disclaimer that Savitr's solicitation of proxies was not made by Western management was

5    not contained on the cover of the proxy circular, but on the first page of the substantive

6    discussion.  Trans. at 37.  On this record, Western raised minimally "debatable issues of

7    law and fact" in its trademark claim, unlike the plaintiff in *Secalt*, which continued to pursue

8    its action for trade dress protection even after another district court denied the plaintiff's

9    motion for a preliminary injunction in a separate action regarding the same claimed trade

10   dress, citing "an utter failure of evidence" to support its trade dress claim.  668 F.3d at 688.

11   Furthermore, after Western filed its complaint, Savitr issued a corrective letter to

12   shareholders to clarify that the Savitr flyer showing the Western logo was not sent by

13   Western and further represented to the court that it would not distribute any more materials

14   using the Western logo.  Trans. at 19, 29, 36.  The court's decision to deny Western's TRO

15   application, after weighing the evidence and considering the arguments, does not render

16   the trademark infringement claim groundless or unreasonable.

17            Savitr has not demonstrated that this case is exceptional for purposes of awarding

18   fees under the Lanham Act.  The motion for attorney's fees is therefore DENIED.  Having

19   determined that an award of fees is not warranted under the Lanham Act, the court does

20   not reach the issue whether the amount of fees requested by Savitr is reasonable.

21                                          **CONCLUSION**

22            For the foregoing reasons, Savitr's motion for attorney's fees is DENIED.

23   **IT IS SO ORDERED.**

24

25   Dated:  June 27, 2013

26                                              _____
                                                PHYLLIS J. HAMILTON
                                                United States District Judge

27

28

14